UNITED STATES, Appellee

v.

Gino J. GALLO, Airman First Class
U.S. Air Force, Appellant

No. 00-0560

Crim. App. No. 33303

United States Court of Appeals for the Armed Forces

Argued April 20, 2001

Decided September 20, 2001

CRAWFORD, C.J., delivered the opinion of the Court, in which SULLIVAN and BAKER, JJ., joined.  SULLIVAN, J., filed a concurring opinion.  GIERKE, J., filed a dissenting opinion, in which EFFRON, J., joined.

Counsel

For Appellant:  Major Stephen P. Kelly (argued); Colonel James R. Wise and Lieutenant Colonel Timothy W. Murphy (on brief).

For Appellee:  Captain James C. Fraser (argued); Colonel Anthony P. Dattilo and Major Lance B. Sigmon (on brief).

Amicus Curiae:  Mark Santos (law student)(argued); Tracy McCormack (supervising attorney)(on brief) – For the University of Texas Law School.


Military Judge:  J. L. Anderson


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

United States v. Gallo, No. 00-0560/AF

Chief Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted of dereliction of duty, in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892, and advertising, transporting, receiving, possessing, and placing on the Internet child pornography, in violation of 18 USC §§ 2251(c), 2252(a)(1), (2), and (4), and 1462(a).  The convening authority approved the sentence of a dishonorable discharge, 42 months' confinement, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals set aside the finding of guilty to possession of child pornography, affirmed the remaining findings, and reassessed and affirmed the sentence as approved by the convening authority.  53 MJ 556 (2000).

We granted review of the following issue:

> WHETHER APPELLANT'S FOURTH AMENDMENT RIGHT TO BE
> FREE FROM UNREASONABLE SEARCHES AND SEIZURES WAS
> VIOLATED WHEN FEDERAL LAW ENFORCEMENT OFFICERS
> EXECUTED A WARRANT TO SEARCH HIS HOME THAT WAS
> ISSUED BASED SOLELY ON AN AFFIDAVIT FROM A
> UNITED STATES CUSTOMS AGENT WHICH CONTAINED ONLY
> A PEDOPHILE BEHAVIORAL PROFILE, AN ALLEGATION
> THAT APPELLANT HAD "CHILD PORNOGRAPHY" IMAGES
> ON HIS WORK SITE COMPUTER, AND OTHER EVIDENCE THAT
> FAILED TO LINK APPELLANT'S HOME TO EVIDENCE OF A
> CRIME.[1]

---

[1] We heard oral argument in this case at the Courthouse of the Supreme Court of Texas in Austin, Texas, as part of this Court's Project Outreach.  See United States v. Allen, 34 MJ 228, 229 n.1 (CMA 1992).

For the reasons set forth below, we affirm the decision of the Court of Criminal Appeals.

## FACTS

Because of a decline in appellant's work performance, in mid-July 1996, appellant's supervisor, Master Sergeant Schipani, examined his work station. On his computer, she found a number of sexually explicit images and subsequently issued a letter of reprimand for the misuse of a government computer.

On October 22, 1996, a computer security monitor, Staff Sergeant Martin, received information from an Internet service provider that a person with a certain Internet Protocol (IP) address was "trading child pornography." Sergeant Martin traced the IP address to appellant's government-issued, work-station computer. He then provided this information to the Office of Special Investigations (OSI).

The next day, Special Agent Schwartz of the OSI, utilizing the information provided by Sergeant Martin, obtained a search warrant to seize a "mirror image" of a hard disk from appellant's government computer. That evening, Special Agents Schwartz and Merkel executed the warrant and made a copy of appellant's hard drive on his government-issued computer. An analysis of this disk revealed 262 graphic images of children "in various sexual encounters, along with some text files."

This search revealed that at least the text files had been viewed from or transferred to computer diskettes.

About 2 weeks later, Special Agent Schwartz interviewed Master Sergeant Schipani and asked if appellant had a computer at home.  Some time later, without advising appellant of his rights, Master Sergeant Schipani asked appellant if he had a home computer, and he said he did.  When the agents received this information, they contacted Mr. Putnoky, who sought the search warrant.  At that time, Mr. Putnoky had been a United States Customs Service agent for 26 years.  Mr. Putnoky had participated in numerous child pornography investigations.  He had spent the previous 3½ years in an undercover capacity for the Customs Service, which plays a lead role in investigating child pornography that enters the United States through the mail or the Internet.  "Commercially produced child pornography historically has been and continues to be a product of foreign distributors...."  (From Mr. Putnoky's affidavit, infra). Mr. Putnoky prepared an affidavit and submitted it to a federal magistrate judge, who then issued a search warrant for appellant's residence and his personal computer.  The affidavit also contained the following:

> 6.  Based on my training and experience, I have learned that:

A. The term "pedophile" (preferential child molester) is a psychiatric diagnostic term which refers to persons who have a sexual attraction to children. These persons are also referred to as "preferential child molesters." I have attended both formal training and seminars in the field involving child pornography investigations, importation and distribution of child pornography and obscene materials given by the U.S. Customs Service, the Federal Bureau of Investigation and numerous State and Local law enforcement agencies/departments. I have participated in the interviews of pedophiles....

B. Pedophiles collect sexually explicit or suggestive materials involving children such as photographs, magazines, video tapes, books, computer disks....

C. Pedophiles rarely, if ever, dispose of their sexually explicit materials....

D. It has been my experience that pedophiles almost always maintain and possess their materials (pictures, films, video tapes, computer disks, correspondence and photographs) in a place considered secure, frequently within the privacy and security of their own homes. It has been my experience that pedophiles residing with parents, other family members, or any other person not aware of their activities, will often conceal their child pornography and related materials within their residence, secreted and concealed in locations known only by them and no one else cohabiting in the same residence.

....

7. My belief [is] that this property is located within the premises to be searched [(appellant's home)].

....

8. On October 23, 1996, the United States Air Force, Office of Special Investigations (OSI), Maxwell Air Force Base, Montgomery, Alabama, commenced an investigation into the possible trafficking of child pornography over the computer internet systems. This investigation involved the soliciting and advertising of child pornography on the DALnet IRC network by Gino GALLO. A systems administrator associated with the DALnet IRC discovered computer traffic indicating the trading of child pornography.

5

9. Tracy REED, DALnet systems administrator located at San Diego, California, researched the source of the solicitations/advertisements and identified Gino GALLO's Internet Protocol (IP) address (143.158.38.2) as the source of the solicitation/advertisement. This Internet Protocol (IP) address is assigned to the computer that subject GALLO operates in room 122, building 856, which is located at Maxwell Air Force Base, Gunter Annex, Montgomery, Alabama. Mr. REED notified officials in the United States Air Force of his findings.

....

13. .... The analysis of the hard drive ... disclosed that on several instances, files were either downloaded or uploaded from the hard drive to a diskette[.]

14. Based on the facts presented in this Affidavit, your affiant has probable cause to believe that presently, and/or at the time of this warrant's execution, there is property contained within the place to be searched, which is evidence of violations of Title 18, United States Code, Sections 2251, et seq. and/or 1462, as well as other documents, records, correspondence, receipts, order forms and/or other materials reflecting the importation, purchase, receipt and/or possession of child pornography. Additionally, there is property which was designed or intended for use, is being used, or has been used as a means of committing criminal offenses under Title 18, United States Code, Sections 2251, et seq. and 1462.

The affidavit also contained the following information:

1. A statement that "approximately 262 apparent child pornography photographs" were found on appellant's work computer.

2. The fact that several of the photographs seized from appellant's work computer matched imported photographs seized in other Customs' cases.

3. A statement that Master Sergeant Shipani had confirmed appellant owned a home computer.

4. A statement that an analysis of appellant's work computer indicated that computer files of unknown content had been "downloaded or uploaded from the hard drive to a

6

> diskette, relating to files received over the internet.
> Once these files are downloaded to a diskette, this makes
> the files extremely portable in nature."

## DISCUSSION

Mil.R.Evid. 315(f)(2), Manual for Courts-Martial, United States (1995 ed.),[2] defines probable cause as "a reasonable belief that the ... property ... sought is located in the place ... to be search[ed]."  This definition encompasses showing a nexus to the place to be searched, and that the information relied on is not too stale.  United States v. Lopez, 35 MJ 35, 38-39 (CMA 1992).  In determining whether probable cause existed, all the information set forth in the affidavit need not be used.  Based on the ruling by the trial judge and the decision of the Court of Criminal Appeals, we will assume that Master Sergeant Schipani's inquiry whether appellant owned a home computer was improper.  See United States v. Grooters, 39 MJ 269, 273 (CMA 1994).  Even so, when there are misstatements or improperly obtained information, we sever those from the affidavit and examine the remainder to determine if probable cause still exists.  See, e.g., United States v. Canfield, 212 F.3d 713, 717-18 (2d Cir. 2000).  As the Eighth Circuit Court of Appeals recently stated in Technical Ordnance, Inc. v. United States, 244 F.3d 641, 647 (8th Cir. 2001):

> Even if a false statement or omission is

---

[2] The Manual provision cited is the version in effect at the time of appellant's court-martial.  The current version is unchanged.

7

> included in an affidavit, the Fourth Amendment
> is not violated if the affidavit would still
> show probable cause after such falsehood or
> omission is redacted or corrected.

In reviewing the affidavit, we should bear in mind that

> "[a] grudging or negative attitude by reviewing courts
> towards warrants" ... is inconsistent with the Fourth
> Amendment's strong preference for searches conducted
> pursuant to a warrant; "courts should not invalidate
> warrant[s] by interpreting affidavits in a hyper-
> technical, rather than a commonsense, manner."

Illinois v. Gates, 462 U.S. 213, 236 (1983)(citations omitted).
Certainly, conclusory statements should not be in an affidavit,
but in the end, the review process deals with the question of
probability.  The issue is whether there was a "substantial
basis" upon which the federal magistrate judge could have found
probable cause to believe a search of appellant's residence
would uncover child pornography.  United States v. Carter, 54 MJ
414, 421 (2001).

As to the time element, information more than 6 months old
when seizing pornography on a computer or a hard drive has been
allowed.  United States v. Hay, 231 F.3d 630 (9th Cir. 2000)
(6 months); United States v. Lacy, 119 F.3d 742 (9th Cir.
1997)(10 months).

As to the nexus requirement, the affidavit by the agent,
who had 26 years' experience in law enforcement, set forth his
opinion as to how pornographic material is obtained and stored.

United States v. Gallo, No. 00-0560/AF

The courts have allowed a gap in the nexus to be filled in based on the affiant's experience.

> A judicial officer may give considerable weight to "the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found," United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir. 1987), and is "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of the offense." United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986).

United States v. Lawson, 999 F.2d 985, 987 (6th Cir. 1993); see also United States v. Hodge, 246 F.3d 301 (3d Cir. 2001); United States v. Emmons, 24 F.3d 1210 (10th Cir. 1994).

In addition to the affiant's experience, other factors bolster the opinion as to where the child pornography might be found in appellant's home. There were 262 pictures found; appellant fit the pedophile profile; he had advertised for child pornography; solicited child pornography; and downloaded and uploaded child pornography from his work computer. Based on these factors, it is reasonably probable that appellant would keep and work on this material in a place over which he had substantial control. Additionally, it is reasonable to infer that the additional materials would be secreted in a place other than his office. Lopez, 35 MJ at 39; see also United States v. Koelling, 992 F.2d 817, 819-20, 823 (8th Cir. 1993)(upheld warrant containing statement that "pedophiles ... keep these

9

materials [(child pornography)] for many months and years, and rarely, if ever, dispose of their collections").

Even if probable cause was lacking because of the failure to establish a nexus with appellant's house, the good faith exception in Lopez would apply. We have excised any statements obtained in violation of Article 31, UCMJ, 10 USC § 831; there is no evidence of an intentional misstatement, nor is this a bare bones affidavit that would preclude the application of the good faith exception. This is a detailed affidavit presented by an experienced law enforcement official investigating child pornography on the Internet. In 1996, these investigations were not as prevalent as they are today. Thus, to ensure that the warrant was not issued based on a bare bones statement, the officer set forth and detailed his experience and why he believed child pornography would be at appellant's house.

This officer's opinion is supported by Special Agent Schwartz's testimony that the search of the office computer showed at least three text files from this directory had been modified using the Microsoft Word program. At the time, the files were opened and the Word program was downloaded to a floppy diskette. According to Special Agent Merkel, this downloading yielded three possibilities: (1) "It could mean that ... a file was resident on the hard drive ... could have been opened ... and then saved to the floppy drive,"; "The file

10

could have been present on the floppy drive and then opened,"; or (3) the file "could have been created and then saved to the floppy drive."

Based on this testimony, the Court of Criminal Appeals adopted the military judge's finding: "The analysis by the AFOSI also revealed that some files had been either read from the floppy drive, transferred from the hard drive to the floppy drive, or transferred from the floppy drive to the hard drive." 53 MJ at 559. The 262 images of child pornography, the Internet solicitation, the Internet advertisement, and the pedophile profile justify the inference that the material sought would be at appellant's residence. Because of the breath of this material, at a minimum, the application of the good faith exception seems appropriate. Thus, we hold that the judge did not abuse his discretion in denying appellant's motion to suppress.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Gallo, 00-0560/AF

SULLIVAN, Judge (concurring):

I write separately to amplify a certain point made by the majority.  Specifically, the information averred in the affidavit and provided to the magistrate judge constituted sufficient probable cause to issue a search warrant in this case.

This case is factually similar to United States v. Hay, 231 F.3d 630 (9th Cir. 2000).  In Hay, a magistrate judge issued a search warrant to search the appellant's apartment and seize the appellant's "computer hardware, software, records, instructions or documentation, and depictions of child pornography."  Id. at 633.  The supporting affidavit averred that a known child pornographer in Canada had sent 19 graphic files to the appellant's Internet address; that the same Internet address was associated with a network port wired to the appellant's apartment; and that, by the appellant's own admissions to an undercover Customs agent, the appellant maintained a computer in his apartment wired to the Internet for his sole use.  Id. at 632-33.  Although there was no direct evidence that the images of child pornography would actually be found in the appellant's apartment, the Ninth Circuit believed the magistrate judge could reasonably infer so from the facts found in the affidavit.  Id. at 636.

Likewise in this case, the magistrate judge had a substantial basis to find the probable cause necessary to issue the search warrant. As in Hay, this appellant told someone (viz. his supervisor) about his computer at home. Moreover, investigators found 262 images of child pornography on appellant's computer at work. Rather than having the files sent to his personal Internet address, evidence indicates that appellant downloaded Internet files to his work computer and then transferred those files to diskettes. Consistent with the Ninth Circuit's approach in Hay, I think the magistrate judge could reasonably infer that appellant had stored images of child pornography on his computer at home. See United States v. Lacy, 119 F.3d 742 (9th Cir. 1997); but cf. United States v. Weber, 923 F.2d 1338 (9th Cir. 1990).

GIERKE, Judge, with whom EFFRON, Judge, joins (dissenting):

In my view, there was no probable cause for the search of appellant's home. The search warrant was based on illegally obtained evidence that appellant had a computer in his home, a false statement that images had been uploaded or downloaded from appellant's work-station computer, an unsubstantiated assumption that appellant was a pedophile, and a bare bones assertion that the images on appellant's work-station computer were pornographic.

Furthermore, I do not believe that the magistrate judge had a "substantial basis for . . . conclud[ing] that probable cause existed." United States v. Carter, 54 MJ 414, 418 (2001), quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983). Where a warrant is issued based on false information, "the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based. Franks v. Delaware, 438 U.S. 154 . . . (1978)." Carter, 54 MJ at 419, quoting United States v. Leon, 468 U.S. 897, 914-15 (1984).

In this case, Special Agent (SA) Merkel, a "computer forensic specialist," examined appellant's work-station computer at the request of SA Schwartz, the OSI lead investigator. SA Merkel concluded that there was nothing in the computer necessarily indicating that images had been downloaded to a floppy disc.

SA Schwartz passed the results of his investigation, including SA Merkel's analysis, to SA Putnoky, who prepared an affidavit and submitted it to the magistrate judge. Contrary to SA Merkel's conclusions, SA Putnoky's affidavit asserted that "analysis of the hard drive on the government owned computer at [appellant's] work cite disclosed that on several instances, files were either downloaded or uploaded from the hard drive to a diskette." In my view, the investigators knowingly or recklessly provided the magistrate with false information.

SA Putnoky's affidavit provided no description of the images found on appellant's computer. It merely set out his conclusions that they were "child pornography," "adult pornography," and "apparent child pornography." It is well established that "[t]he magistrate's determination 'cannot be a mere ratification of the bare conclusions of others.'" Carter, supra, quoting Leon, supra. In United States v. Monroe, 52 MJ 326, 332 (2000), this Court reaffirmed that a magistrate may not rely on the bare bones conclusions of investigators, but instead, "must be provided sufficient information to make an independent determination under the totality of the circumstances." In Monroe, this Court held that the phrase "graphic pornographic photographs" was sufficient to describe "obscenity as legally defined." This Court cautioned, however, that "[t]his is a case of borderline sufficiency and should not be taken as a model for future conduct." Id. In my view, this Court drew the line in Monroe, and this case goes beyond that line.

2

SA Putnoky's affidavit also assumed that appellant was a pedophile, and described at great length the kinds of items that are usually found in the homes of pedophiles. SA Putnoky's affidavit, however, provided no factual support for his conclusion that appellant was a pedophile. Without such factual support, the affidavit did not provide sufficient information to permit the magistrate to independently determine whether appellant was a pedophile.

The basis for searching appellant's home was SA Putnoky's unsupported assertion that appellant was a pedophile, SA Putnoky's unsupported assertion that the images were pornographic, and SA Putnoky's false representation that images had been uploaded or downloaded on appellant's work-station computer, using a floppy disc. Because the supporting affidavit contained false information and relied heavily on bare bones conclusions without supporting facts, I am unwilling to agree that the magistrate had a substantial basis for concluding that probable cause existed.

Furthermore, in my view, the good faith exception in Mil. R. Evid. 311(b)(3)(B), Manual for Courts-Martial, United States (1995 ed.),[*] cannot save the search in this case. In United States v. Leon, supra, the Supreme Court set out four circumstances where the good faith exception does not apply: (1) a false or reckless affidavit; (2) a "rubber stamp" judicial

---

[*] The Manual provision cited is the version in effect at the time of appellant's court-martial. The current version is unchanged.

review; (3) a facially deficient affidavit; and (4) a facially deficient warrant. See Carter, 54 MJ at 419-20. The "substantial basis" prong of Mil. R. Evid. 311(b)(3)(B) is not satisfied if the affidavit is intentionally or recklessly false, or if it is a "'bare bones' recital of conclusions." Id. at 421. In this case, SA Schwartz and SA Putnoky, the agents who executed the warrant, were the sources of the false information and the "'bare bones' recital of conclusions." Unlike the majority, I do not consider SA Putnoky's 26 years of investigative experience as a factor supporting good faith. To the contrary, I would expect an experienced agent to understand the implications of providing false information and relying on bare bones conclusions. Under these circumstances, I cannot conclude that SA Schwartz and SA Putnoky acted in good faith.

In my view, the military judge erred by refusing to suppress the evidence seized from appellant's home. Accordingly, I dissent.