UNITED STATES, Appellee

v.

Edward S. MACOMBER, Airman First Class
U.S. Air Force, Appellant

No. 08-0072

Crim. App. No. 36693

United States Court of Appeals for the Armed Forces

Argued October 21, 2008

Decided February 24, 2009

BAKER, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN and STUCKY, JJ., joined. RYAN, J., filed a
separate dissenting opinion.


Counsel

For Appellant: Captain Tiaundra Sorrell (argued); Lieutenant
Colonel Mark R. Strickland (on brief).


For Appellee: Captain Coretta Gray (argued); Colonel Gerald R.
Bruce and Major Matthew S. Ward (on brief); Major Jeremy S.
Weber.


Amicus Curiae for Appellant: Kimberly M. J. Lynch (law student)
(argued); Randall Hodgkinson, Esq. (supervising attorney), Mark
Coulter (law student) and E. Lee Oliver (law student) (on
brief); Jeffrey D. Jackson, Esq. -- for the Washburn University
School of Law.


Military Judge: James L. Flanary


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Macomber, No. 08-0072/AF

Judge BAKER delivered the opinion of the Court.

Appellant entered mixed pleas to two specifications under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000), before a military judge sitting as a general court-martial.  He pled guilty to receipt of child pornography but contested a separate specification alleging wrongful possession of child pornography.  He was ultimately convicted of both offenses.  The adjudged and approved sentence included a bad-conduct discharge, confinement for eighteen months, forfeiture of all pay and allowances and reduction to pay grade E-1.  The United States Air Force Court of Criminal Appeals affirmed.  United States v. Macomber, No. ACM 36693, 2007 CCA LEXIS 345, 2007 WL 2500313 (A.F. Ct. Crim. App. Aug. 31, 2007) (unpublished).

Prior to trial, Appellant moved to suppress evidence seized as a result of a search of his military dorm room based on a lack of probable cause.  The military judge accepted a stipulation of fact agreed to by the parties in support of the motion.  The military judge denied the motion, concluding that the search authority had probable cause to authorize the search. Appellant challenges that ruling in this Court.  For the reasons that follow, we affirm.[1]

---

[1] Oral argument in this case was heard at the Washburn University School of Law, Topeka, Kansas, as part of the Court's "Project

United States v. Macomber, No. 08-0072/AF

                              FACTS[2]

     In February 2004, Special Agent (SA) Novlesky of the

Immigration and Customs Enforcement Agency (ICE) in Minot, North

Dakota was notified by his agency colleagues that during a child

pornography website takedown operation called "Operation

Falcon," Appellant was identified as a child pornography website

subscriber.  The website known as "LustGallery.com- A Secret

Lolitas Archive" was dismantled during Operation Falcon, and ICE

agents recovered credit card information relating to its

subscribers, including Appellant.  As a result of Operation

Falcon, SA Novlesky received a "Site Index" listing child

pornography website subscribers located in North Dakota.

Appellant was identified on this index by his name, dormitory

address, telephone number, commercial e-mail account and credit

card information.  The index lists:  "Edward Macomber, Dorm 211

Unit 503, Minot, North Dakota, 58705, (701) 727-6236 . . . ."

The evidence showed that Appellant had accessed

"LustGallery.com" on April 18, 2003.

---

Outreach."  See United States v. Mahoney, 58 M.J. 346, 347 n.1
(C.A.A.F. 2003).  This practice was developed as part of a
public awareness program to demonstrate the operation of a
federal court of appeals and the military justice system.

[2] The language of this factual recitation, with slight
modification, is taken directly from the stipulation of fact
agreed to by the parties and relied upon by the military judge.

SA Novlesky subsequently obtained the grand jury evidence relating to Operation Falcon in order to verify the information presented to him by his ICE colleagues.  He then contacted the bank relating to the credit card information linked to Appellant in order to verify the accuracy of the information.  Because the address listed by Appellant when he signed up for the "LustGallery.com" services appeared to be a military dormitory address, SA Novlesky concluded that Appellant was a member of the Air Force stationed at Minot Air Force Base (AFB).  He contacted the Air Force Office of Special Investigation (OSI) to share the information he had and to verify Appellant's identity and military status.  SA Novlesky met with OSI Special Agent Patrick White to discuss options for proceeding with the investigation of Appellant, and the agents agreed to conduct a joint investigation.  SA Novlesky recommended to OSI that Postal Inspector Rachel Griffin be contacted to send a target letter to Appellant offering him child pornography.  OSI agreed and Inspector Griffin was contacted and brought in as part of the investigation team.

Pursuant to this investigation, Inspector Griffin sent a letter and a "Sexual Interest Questionnaire" to Appellant from Eclipse Films, a fictional company purporting to specialize in illegal pornography.  The correspondence stated that pornography offered by the film company was "illegal" and must be kept in

4

the "strictest confidence."  The correspondence was sent to Appellant's mailing address at Dorm 211 on Minot AFB.  Appellant was on temporary duty to Guam at the time, so the letter was forwarded to him at his temporary duty location.  Appellant completed the questionnaire listing "teen sex" and "pre-teen sex" among his sexual interests and indicated his interest in buying pornography from the company.  He mailed the items back to Inspector Griffin at her undercover post office box.  The letter was postmarked from Guam, but Appellant indicated his return address on the envelope as "Dorm 211, Unit 503, Minot AFB, ND 58705."  Inspector Griffin sent Appellant a letter thanking him for his interest list and describing the available videos fitting his stated sexual interests along with an order form pricing the videos at twenty dollars each.

On June 14, 2004, Inspector Griffin received a pre-stamped white business size envelope in the mail.  The envelope was postmarked "Minot, ND June 8, 2004" with the return address listed as "Edward Macomber, Dorm 211, Unit 503, Minot AFB, ND 58705."  The envelope contained a completed order form indicating Appellant's request to purchase two child pornography videos titled "IC-5 Mixed Sleepover" and "IN-9 Sweet Sixteen."  A postal money order was enclosed for the amount of forty dollars payable to Eclipse Films.  The purchaser was listed as "Ed Macomber, Dorm 211, Unit 503, Minot AFB, ND 58705."

The law enforcement team planned a controlled delivery of a package containing the two child pornography videos ordered by Appellant. Prior to the controlled delivery, SA White coordinated with Inspector Griffin and the Minot legal office to prepare an affidavit in support of search authority for Appellant's dormitory room. The application for search authorization was prepared for submission to the base magistrate, Lieutenant Colonel (Lt Col) James Harrold. Although this was SA White's first child pornography case, he received guidance from fellow OSI agents with more specific experience in child pornography cases. Inspector Griffin provided SA White with profile information relating to individuals who view child pornography and who have a sexual interest in children. She conferred with other postal inspectors prior to advising SA White on the profile information in the affidavit. SA White discussed the affidavit with other more experienced agents in his office and his detachment commander.

On June 21, 2004, SA White briefed the magistrate on the investigation into Appellant's activities and provided him the affidavit in support of search authority for Appellant's dormitory room and personal vehicle. Lt Col Harrold read the affidavit twice and discussed its contents with SA White. SA White told Lt Col Harrold that Appellant was identified as a subscriber to a known child pornography website through

6

Operation Falcon.  However, Lt Col Harrold was not told that Appellant had accessed the website on April 18, 2003, fourteen months earlier.  Lt Col Harrold was also informed that Appellant had identified himself through a sexual interest questionnaire as having a sexual interest in "teen sex" and "pre-teen sex" and that Appellant had ordered two child pornography videotapes through the mail from undercover Inspector Griffin for delivery to his address at Dorm 211, Minot AFB, North Dakota.  SA White discussed the operational plan for the controlled delivery of the package with Lt Col Harrold, along with the alternative plans in the event that Appellant did not return to his dorm room or in the event he tried to leave the base with the package.  The affidavit provided to Lt Col Harrold listed a synopsis of each movie Appellant had ordered.  In the synopsis, both movies were described in fairly graphic detail as featuring children engaged in sexual acts.

SA White based the request for search authority on Appellant's actions prior to his receipt of the actual videos from Eclipse Films.  Specifically, the request was based on Appellant's subscription to the "LustGallery.com" child pornography website using his dorm room address, his self-proclaimed interest in children engaged in sex, and his attempt to order movies containing child pornography.  While the affidavit stated that SA White expected to find a parcel

7

addressed to Appellant from Eclipse Films, this was not the basis for the search authority nor was it the reason the magistrate found probable cause.

The affidavit also included "pedophile profile information." This information was based on SA White's discussion with Inspector Griffin and included profile information relative to individuals interested in child pornography or those sexually interested in children. It was also based on SA White's training while attending the OSI Academy and the Federal Law Enforcement Training Center during which "typical behavior of child pornographers" was described. The affidavit stated:

> child pornographers and persons with a sexual attraction to children almost always maintain and possess child pornography materials such as: photographs, magazines, negatives, films, videotapes, graphic image files, correspondence, mailing lists, books, tapes, recordings and catalogs. These materials are stored in a secure but accessible location within their immediate control, such as in the privacy and security of their own homes, most often in their personal bedrooms.

Lt Col Harrold granted authority for the search of Dorm 211, Room 104, Minot AFB, ND 58705, and the search of Appellant's 2002 Mitsubishi Mirage. According to the stipulation of fact, he based his probable cause finding "mainly on the information linking [Appellant] to a pay-for child pornography website, together with the information submitted by [Appellant] indicating his sexual interest in children, the

correspondence whereupon [Appellant] listed his dormitory address attempting to obtain child pornography, and the fact that [Appellant] ordered two child pornography videos through the mail." He considered all of this information together with the profile information from experienced agents in the field that showed the likelihood that individuals with child pornography usually keep close possession and control of the pornography and often keep it in their homes and bedrooms.

That same day, Inspector Griffin and SA White set up the controlled delivery of the child pornography videos to Appellant's mailing address at the Postal Service Center at Minot AFB. The OSI agents were aware that the mail delivery system on Minot AFB required that packages be picked up by dorm residents at the service center rather than delivered to them at their dorm rooms. Because of the illegal nature of child pornography, it was necessary for the agents to maintain control of or visual contact with the contraband package at all times. Therefore, OSI agents conducted surveillance of Appellant throughout the day on June 21, 2004, while Inspector Griffin maintained visual control of the package in the service center. Appellant picked up the package containing the child pornography videos and exited the service center. Two agents outside the service center drove by Appellant as he exited the facility in an effort to photograph him. However, the camera flash went off

when they took the picture.  Appellant proceeded to his vehicle, sat inside for a few moments, then got out of his vehicle and attempted to return the package to the service center, at which point he was apprehended.

Following the apprehension, the agents initiated a search of Appellant's residence in accordance with the search authorization.  The search revealed several pages of printed materials and photos, writings Appellant had made regarding specific child pornography websites, and several hundred suspected child pornography images retrieved from his computer.

## DISCUSSION

We review a military judge's denial of a motion to suppress for an abuse of discretion.  United States v. Leedy, 65 M.J. 208, 212 (C.A.A.F. 2007); United States v. Rader, 65 M.J. 30, 32 (C.A.A.F. 2007).  An abuse of discretion occurs if the military judge finds clearly erroneous facts or misapprehends the law. Leedy, 65 M.J. at 213.  In this case, the military judge relied on facts stipulated to by the parties, therefore the question here concerns the military judge's application of the law, which we review de novo.  Rader, 65 M.J. at 32 (conclusions of law reviewed de novo); United States v. Flores, 64 M.J. 451, 454 (C.A.A.F. 2007).  The core legal question in the case is whether the military judge correctly ruled that the search authority had a substantial basis for determining that probable cause existed.

Illinois v. Gates, 462 U.S. 213, 238-39 (1983); United States v. Carter, 54 M.J. 414, 418 (C.A.A.F. 2001).  "'The task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant.'"  United States v. Monroe, 52 M.J. 326, 331 (C.A.A.F. 2000) (quoting Massachusetts v. Upton, 466 U.S. 727, 728 (1984)).

This standard reflects the law's preference for warrants and for independent review by magistrates.  "In reviewing a decision that there was probable cause for a search, we must keep in mind that a determination of probable cause by a neutral and detached magistrate is entitled to substantial deference."  Carter, 54 M.J. at 419 (citation and quotation marks omitted); Monroe, 52 M.J. at 331 (citations omitted); United States v. Maxwell, 45 M.J. 406, 423 (C.A.A.F. 1996) (citation omitted).  "A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant."  Upton, 466 U.S. at 733.  We have interpreted the Supreme Court's guidance to require that resolution of doubtful or marginal cases should be largely determined by the preference for warrants and that "[c]lose calls will be resolved in favor of sustaining the magistrate's decision."  Monroe, 52 M.J. at 331 (citation and quotation marks

11

omitted); Maxwell, 45 M.J. at 423 (citation omitted). "'A grudging or negative attitude by reviewing courts towards warrants,' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate [warrants] by interpreting [affidavits] in a hypertechnical, rather than a commonsense, manner.'" Gates, 462 U.S. at 236 (quoting United States v. Ventresca, 380 U.S. 102, 108-109 (1965)) (alteration in original); Carter, 54 M.J. at 419.

"Probable cause to search exists when there is a reasonable belief that . . . property or evidence sought is located in the place or on the person to be searched." Military Rule of Evidence 315(f)(2). The search authority is required to make this determination based on the "totality-of-the-circumstances." Gates, 462 U.S. at 238; Carter, 54 M.J. at 418; Monroe, 52 M.J. at 331; United States v. Bethea, 61 M.J. 184, 187 (C.A.A.F. 2005). A probable cause determination is "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before" the search authority, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238; Bethea, 61 M.J. at 187 (citation omitted). As this Court has explained, probable cause deals with probabilities:

It is not a technical standard, but rather is based on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause requires more than bare suspicion, but something less than a preponderance of the evidence. Thus, the evidence presented in support of a search need not be sufficient to support a conviction, nor even to demonstrate that an investigator's belief is more likely true than false, there is no specific probability required, nor must the evidence lead one to believe that it is more probable than not that contraband will be present. The duty of the reviewing court is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.

[P]robable cause is founded not on the determinative features of any particular piece of evidence provided an issuing magistrate . . . but rather upon the overall effect or weight of all factors presented to the magistrate.

Leedy, 65 M.J. at 213 (citations and quotation marks omitted).

Finally, "[i]n reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party." Id. (citation and quotation marks omitted); United States v. Reister, 44 M.J. 409, 413 (C.A.A.F. 1996).

ANALYSIS

Appellant makes four arguments challenging the magistrate's finding of probable cause. In particular, Appellant argues that there was insufficient information placed before the magistrate to reflect a search nexus to his dorm room, a computer in his dorm room, and to link Appellant to the generic pedophile profile presented by SA White. Finally, he argues that his subscription to the "LustGallery.com" site did not provide such

13

a nexus because the information was fourteen months old and therefore stale. These arguments are necessarily related where the totality of the circumstances is weighed. With that in mind, we consider each argument in turn, recognizing that the question presented is not whether one fact or another provided sufficient cause, but whether the facts taken as a whole did so.

First, Appellant argues there was an insufficient nexus between the child pornography discovered in his possession at the post office and his dorm room to provide cause to search his dorm room. The argument is based on the apparent ground that the mail for dormitory residents was delivered to the Postal Service Center as opposed to the individual rooms; since Appellant was apprehended at the service center, it was unreasonable to infer that additional child pornography would be found in his dorm room.

The facts indicate otherwise. As stipulated, Appellant used his dorm address as the return address in his correspondence with the agents when he ordered pornographic videotapes and when responding to the sexual interest questionnaire. Further, Appellant concedes that this was his only address. In the military context, the barracks or dormitory often serves as the servicemember's residence, his or her home. That was true for Appellant. Based on these facts, common sense would suggest a fair probability that any child

pornography Appellant might possess would be located in his dorm
room.

Appellant's first nexus argument necessarily leads to
Appellant's additional arguments that the evidence presented to
the magistrate did not support a fair inference that Appellant
owned a computer, on which he might store child pornography, or
that he fell within the generic pedophile profile presented to
the magistrate.  In Appellant's view, without such an inference,
there was no reason to believe pornography would be stored in
his room.  Appellant correctly points out that while SA White's
affidavit presented a "pedophile profile," including and in
particular the statement that pedophiles are likely to store
pornography at their places of residence, it did not expressly
conclude or state that Appellant fit the profile.  Indeed, while
courts have relied on such profiles to inform search
determinations, clearly, a profile alone without specific nexus
to the person concerned cannot provide the sort of articulable
facts necessary to find probable cause to search.

But that is not this case.  The stipulated facts reflect
that Appellant had subscribed to an Internet child pornography
web service in the past, and that he expressed an ongoing
interest in child pornography in the present.  He had recently
filled out a questionnaire documenting this interest.  Such
facts may or may not place Appellant within a generic pedophile

profile or a clinical pedophile profile,[3] but they certainly reflect an ongoing interest in child pornography. Based on common sense, law enforcement experience, and case law, the military judge reasonably concluded there was a fair probability that a person with an interest in child pornography, who has ordered child pornography in the past and in the present, is likely to store such pornography in some quantity at a secure and private location. For a servicemember residing on a military installation, that means his dormitory room, barracks, or vehicle.

This also moots Appellant's argument that the only evidence presented to the magistrate suggesting that he might own a computer was based on his earlier subscription to an Internet child pornography service. As the parties recognize in their arguments, the critical question in this case is whether there was sufficient nexus to the dorm room to substantiate a search. Once the agents had probable cause to search the dorm room, agents were also authorized to search where the items sought might reasonably be located, and therefore the computer was within the scope of the search authorization. In any event, Lt Col Harrold reasonably relied on the common sense inference that a military member who subscribed to an Internet website while

---

[3] A point we need not decide in the context of this case.

16

listing his dormitory as his address owned a computer, and that the computer would likely be found in his dormitory room.

That leads to Appellant's final argument that, to the extent the magistrate's finding of probable cause was based on his earlier subscription to a pornographic web service, that information was stale. Moreover, because the magistrate was not told of this time lag, the affidavit in general is unreliable and lacks credibility. Timeliness informs probable cause. United States v. Lopez, 35 M.J. 35, 38 (C.M.A. 1992). The passage of time may diminish the likelihood that what is sought will be found in the place to be searched. Id. As a result, the magistrate should have been apprised of this time lag. However, "[w]hether too long a period has elapsed from the time the facts are obtained until the search is authorized depends on many factors." Id. They may include, but are not limited to, the location to be searched, the type of crime involved, the nature of the articles to be seized, and how long the crime has been continuing. Id. In Leedy, for example, we recognized that in the context of child pornography, a law enforcement expert's experience might reasonably inform a magistrate's judgment as to whether, and for how long, a child pornographer might retain pornography. 65 M.J. at 216. However, we also cautioned that "relying upon expertise too heavily, at the expense of hard facts, can be troubling and is open to abuse." Id.

17

Here we have hard facts.  The agent's affidavit established that this was an investigation into the unlawful possession of child pornography.  The nature of the contraband sought was such that it was highly portable, easily secreted, and often stored in the possessor's home in a variety of forms and on a variety of media.  The affidavit also indicated that at some point Appellant had subscribed to a child pornography website.  But that information did not stand alone.  This information prompted the agents to conduct a ruse that confirmed Appellant's current interest in this contraband in the form of a sexual interest questionnaire and a subsequent controlled delivery.  As such, it was part of the total circumstances raising the fair probability that Appellant had a present as well as a past sexual interest in or a sexual attraction to children, that he probably possessed child pornography material, and that it probably was kept where he lived.

## DECISION

Based on this record, we conclude that the military judge did not err in ruling that the magistrate had a substantial basis for finding probable cause in this case.  The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Macomber, No. 08-0072/AF

RYAN, Judge (dissenting):

It is undoubtedly true that a magistrate's finding of probable cause "should be paid great deference." Illinois v. Gates, 462 U.S. 213, 236 (1983) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969) (quotation marks omitted). But that deference is "not boundless." United States v. Leon, 468 U.S. 897, 914 (1984). "Probable cause to search exists when there is a reasonable belief that the . . . evidence sought is located in the place or on the person to be searched." Military Rule of Evidence (M.R.E.) 315(f)(2). "In the typical case where the police seek permission to search a house for an item they believe is already located there, the magistrate's determination that there is probable cause for the search amounts to a prediction that the item will still be there when the warrant is executed." United States v. Grubbs, 547 U.S. 90, 95 (2006). Because I do not agree that the facts presented to the magistrate in Special Agent White's affidavit and briefing supported a prediction that child pornography had ever been in Appellant's dormitory room, let alone was still there at the time of the search, I respectfully dissent.[1]

---

[1] Moreover, while these same facts certainly demonstrate that Appellant has interests that are perverse, they do not establish a "reasonable belief" that he ever possessed child pornography, either at the time he accessed the website or at the time the search authorization was sought. M.R.E. 315(f)(2).

As defined in M.R.E. 315(f)(2), a finding of probable cause "encompasses showing a nexus to the place to be searched." United States v. Gallo, 55 M.J. 418, 421 (C.A.A.F. 2001); see also Gates, 462 U.S. at 238 (defining probable cause as "a fair probability that contraband or evidence of a crime will be found in a particular place") (emphasis added). In this case, the fact that Appellant had once accessed a child pornography website was central to the magistrate's finding of probable cause to search Appellant's room. But the affidavit did not provide sufficient information to support the inference that this access resulted in Appellant possessing child pornography, let alone that child pornography was in his room. The affidavit merely stated that Appellant "had accessed a fee for service web site known to traffic and display child pornographic images," and contained the agent's unsupported supposition that Appellant "has used his computer system to facilitate the possession/distribution of child pornography." (emphasis added). There is no evidence the agents verified that Appellant actually owned a home computer or had Internet access in his room. The affidavit does not indicate the location of the computer Appellant used;[2] it does not, for example, provide an Internet

---

[2] The Stipulation of Fact states that the federal investigation revealed Appellant provided his dormitory address when he subscribed to the website, but this does not tell us anything about where Appellant was located at the time the "fee for

Protocol (IP) address for that computer.  Nor does it provide information that Appellant purchased or downloaded child pornography from the website.

The affidavit's use of profile information related to "child pornographers and those with a sexual interest in children" cannot mitigate the scarcity of detail in the affidavit.  According to this profile, such people "almost always maintain and possess child pornography materials" and store them "in a secure but accessible location, which is within their immediate control, such as in the privacy and security of their own homes, most often in their personal bedrooms."  Reliance on this profile is problematic, and I cannot agree that all the government ever need do to defeat nexus concerns is provide boilerplate language about the habits of the theoretical "collector."

In this case, nowhere does the affidavit specifically conclude that Appellant fits the "collector" profile because he possessed child pornography, is a "child pornographer," or a person "with a sexual interest in children."  Admittedly, Appellant indicated an interest in viewing child pornography when he responded to the Eclipse Films survey and an interest in acquiring child pornography when he ordered two videos to be

service web site" was accessed.  Presumably, Appellant was required to use his home address when he paid for his subscription with his credit card.

3

sent to him through the mail.  But an express desire to have child pornography delivered to one's home in the future does not by itself support an inference that Appellant previously possessed child pornography in that home, or anywhere else.[3]  It is by no means axiomatic that a person who expresses an interest in owning something actually already has possessed it, particularly when that thing is contraband.  While it is logical to infer that the website subscription gave Appellant access to child pornography, the affidavit neither informs the magistrate where the access occurred nor indicates that Appellant actually downloaded any images to possess in his room or elsewhere.[4]

Although we have previously credited expert reference to "profile evidence" in cases involving child pornography, we have

---

[3] The fact that Appellant instructed Eclipse Films to address the video package to him at his dormitory would undoubtedly have provided probable cause for an anticipatory warrant to be executed once Appellant brought the package back to his room. See Grubbs, 547 U.S. at 95-97.  But it is does not support an inference that he already possessed child pornography in his room.

[4] Nor does the affidavit indicate the number or kind of images Appellant viewed on the LustGallery site.  And the absence of information about where the access occurred is especially problematic when that access is used to support the inference that he possessed child pornography:  if Appellant did nothing more than view images on a public computer, under our case law his actions would not have ipso facto established the offense of possession of child pornography.  See United States v. Navrestad, 66 M.J. 262, 267-68 (C.A.A.F. 2008) (holding that the appellant's act of viewing files containing child pornography on a computer at an Internet café did not amount to possession because appellant "lacked the dominion and control necessary to constitute" the offense).

done so when there were "other factors" to "bolster the opinion as to where the child pornography might be found in appellant's home." Gallo, 55 M.J. at 422. In Gallo, the affidavit supporting the request to search the appellant's home indicated that: (1) the appellant fit the profile of a pedophile; (2) the appellant had advertised for and solicited child pornography; (3) 262 pictures had been found on the appellant's work computer; and (4) the appellant had downloaded and uploaded child pornography from his work computer. Id. Here, however, there were not sufficient "other factors" to allow the magistrate to rely on the profile.

Finally, even assuming the evidence supported an inference that Appellant previously possessed child pornography, the critical fact supporting that inference -- access to the website -- occurred fourteen months prior to the search authorization application. This fact was not disclosed to the magistrate either in the affidavit or in person. This omission is important because "the passage of time at some point results in the likelihood that the goods [sought] will no longer be in the original location." United States v. Lopez, 35 M.J. 35, 38 (C.M.A. 1992). Although the majority states that as a result of the omission "the affidavit in general is unreliable and lacks credibility," they do not find this to be a significant problem. Macomber, __ M.J. at __ (17). While it is true that staleness

5

depends in part on the nature of the evidence sought, and in general we have credited expert opinion that certain people tend to retain child pornography for a long time, United States v. Leedy, 65 M.J. 208, 216 (C.A.A.F. 2007), I disagree that the opinion should be accepted in this case. Here, the magistrate did not know how old the information was, and therefore he could not assess whether it was reasonable for him to rely on the profile to determine that the evidence sought existed anywhere, let alone in Appellant's room.

We are left, in the end, with nothing more than the facts that Appellant has a disturbing interest in child pornography and fourteen months previously had paid to access a website that contained it from an unknown computer. Because these facts neither establish a sufficient nexus between Appellant's room and the child pornography nor support a reasonable belief that Appellant possessed child pornography at all, the magistrate's conclusion that child pornography would specifically be found in Appellant's room is less a "practical, common-sense decision," Gates, 462 U.S. at 238, and more a leap of faith. Such a leap does not reflect the substantial basis required to conclude that there was probable cause to search Appellant's dorm room. In addition, because the sparse details in the affidavit required such a leap to be made, and because the agent omitted information about when the website was accessed, the affidavit

was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (Powell, J., concurring in part)). The affidavit simply failed to provide information from which a nexus between the items sought and the location to be searched could be found. Under these circumstances, the good faith exception of M.R.E. 311(b)(3) does not apply. See United States v. Carter, 54 M.J. 414, 421-22 (C.A.A.F. 2001) (acknowledging that M.R.E. 311(b)(3) was intended to incorporate the good faith exception as outlined in Leon).

I would reverse the Air Force Court of Criminal Appeals and find the military judge erred in denying the motion to suppress the evidence seized in Appellant's dormitory room.