**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

PETER JOHN KRUPA,
   *Defendant-Appellant.*

No. 09-10396

D.C. No.
1:04-cr-05141-
AWI-1

ORDER AND
OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Chief District Judge, Presiding

Argued and Submitted
October 4, 2010—San Francisco, California

Filed September 30, 2011

Before: Marsha S. Berzon and Consuelo M. Callahan,
Circuit Judges, and Charles R. Wolle,
Senior District Judge.*

Opinion by Judge Callahan;
Dissent by Judge Berzon

---

*The Honorable Charles R. Wolle, Senior District Judge for the U.S.
District Court for Southern Iowa, Des Moines, sitting by designation.

18593

## COUNSEL

Katherine Hart, Fresno, California, for defendant-appellant Peter John Krupa.

Benjamin B. Wagner, United States Attorney, and Brian W. Enos (argued), Assistant United States Attorney, Fresno, California, for the United States.

## ORDER

The petition for rehearing is granted, the opinion and dissent filed on February 7, 2011 are withdrawn, and a new opinion and dissent are filed concurrent with this order.

The grant of the petition for rehearing and the filing of a new opinion and dissent moots the petition for rehearing en banc. The parties may file new petitions for rehearing from the new opinion and dissent pursuant to Federal Rule of Appellate Procedure 40.

**OPINION**

CALLAHAN, Circuit Judge:

Peter Krupa appeals from his conditional guilty plea to receiving material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2). Krupa challenges the district court's denial of his motion to suppress evidence seized from computers in his custody. On grounds that differ slightly from those proffered by the district court, we affirm the denial of the motion to suppress.

On April 12, 2002, the military police at Edwards Air Force Base received a call from Rhonda Velasco. She was worried because her ten-year-old daughter and five-year-old son, who were living on the base with her ex-husband, Sergeant Velasco, had not arrived at the train station in Lancaster as previously arranged. Accordingly, the military police went to Sgt. Velasco's home. There they encountered Peter Krupa, a civilian. He indicated that he was taking care of the children while Sgt. Velasco was in the Philippines until April 21, and showed the military police a written note to that effect.

The home was in complete disarray with clothing strewn on the floor and in the hall. Of particular concern were the presence of 13 computer towers and two laptops, some of which were linked together. The military police asked Krupa for consent to take the computers and he initially agreed.

On Tuesday, April 16, 2002, Agent Reynolds (who is trained in, and specializes in investigating computers and digital evidence) was assigned to investigate the seized computers. In his initial search of the computers Reynolds located an image of suspected contraband. Reynolds described the photograph to be of a nude 15- to 17-year-old female with a website label of "www.nude-teens.com." On Sunday, April 21, 2002, Reynolds was hospitalized for chest pain. The follow-

ing day, Krupa revoked his consent to the search of the computers.

Reynolds remained hospitalized until April 25, 2002. While in the hospital he sought authority to continue his search of the computers "for any further items of contraband." The request was based on the photograph and the fact that consent had been revoked. On April 29, 2002, Colonel LaFave, the appointed Primary Search Authority Military Magistrate, signed a search warrant.[1] Reynolds resumed his forensic analysis of the computers, locating adult pornography and 22 images of child pornography.

Sometime thereafter, the matter was transferred to the Federal Bureau of Investigation ("FBI"). Both parties agree that on May 14, 2002, during a non-custodial interview, an FBI Special Agent showed Krupa the suspected child pornographic images recovered from one of the computers and asked him if he recognized the images. Krupa allegedly stated that he "had probably viewed all the images because he recognized that the structure of the filename printed above the computer images to be the same structure he uses to name computer files on his computers." On the basis of the evidence obtained pursuant to the military search warrant and Krupa's statement, the FBI sought and procured a federal search warrant from Judge Wanger of the Eastern District of California.[2]

Krupa was indicted for violating 18 U.S.C. § 2252(a)(4) — possession of visual depictions of minors engaging in sexually explicit conduct. Krupa moved to suppress the evidence seized from his computer. The district judge found that Krupa had standing to challenge the seizure of the computers and

---

[1]Krupa's appeal does not question the propriety of Colonel LaFave acting as the issuing magistrate.

[2]Ultimately 52 images and an additional 48 movies of child pornography were located within the computers.

had withdrawn his consent. The district court determined that although the single photograph was insufficient to show probable cause, citing *United States v. Battershell*, 457 F.3d 1048 (9th Cir. 2006), the motion to suppress would be denied under the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984).

Krupa then pled guilty to receipt of materials depicting sexual exploitation of minors and entered into a plea agreement that reserved his right to appeal the denial of the motion to suppress. He was sentenced to 41 months of incarceration.

We review *de novo* the district court's denial of a motion to suppress evidence. *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006). We review for clear error a magistrate's finding of probable cause to issue a search warrant, and give "great deference" to such findings. *Id.*; *see also United States v. Hay*, 231 F.3d 630, 634 n.4 (9th Cir. 2000).

**[1]** As we noted in *Hill*, our review starts with the Constitution. We stated:

> "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Constitution is clear; a magistrate may authorize a search of a location only if officers establish probable cause to believe evidence of a crime may be found there. Probable cause means only a "fair probability," not certainty, and requires consideration of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, . . . (1983).

*Hill*, 459 F.3d at 970. In *Gates*, the Supreme Court observed that:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given

> all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Jones v. United States* [362 U.S. 257, 271 (1960)].

In applying this standard, we have reiterated the Supreme Court's directive that a magistrate's determination of probable cause should be paid great deference by reviewing courts. *See Millender v. County of Los Angeles*, 620 F.3d 1016, 1025 (9th Cir. 2010)[3]; *U.S. v. Kelley,* 482 F.3d 1047, 1050 (9th Cir. 2007); *Battershell*, 457 F.3d at 1050.

**[2]** We have further noted that *Gates* signaled a change from a technical approach to probable cause to "a return to the 'totality of the circumstances' test and emphasized that probable cause means 'fair probability, not certainty or even a preponderance of the evidence.' " *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc). In *Kelley*, we explained that "[w]hether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a 'commonsense, practical question,' " for which "[n]either certainty nor a preponderance of the evidence is required." 482 F.3d at 1050 (quoting *Gates,* 462 U.S. at 246, and *Gourde*, 440 F.3d at 1069).

The agent's affidavit presented to Colonel LaFave first set forth the agent's qualifications to conduct investigations of computers and recover digital evidence, as well as his experience in investigations related to computer crimes and child pornography. The affidavit then stated that base police,

---

[3]The Supreme Court has granted cert to review *Millender*, *cert. granted* 79 U.S.L.W. 3727 (U.S. June 27, 2011) (No. 10-704).

responding to a report of child neglect, determined that "there were several computers at the location and that there was no custodial parents at the house only an individual KRUPA who was not affiliated with the military." The affidavit stated that Krupa "had care and custody of the residence," which included the 13 computer towers and two laptops. Reynolds' affidavit stated that during his initial investigation of the computers, before consent was withdrawn, he located "an image of suspected contraband," specifically a "photograph [that] appeared to be of a nude 15 to 17 year old female with a web site label of *www.nude-teens.com.*"

[3] Although a close case, we conclude that Colonel LaFave reasonably concluded that there was probable cause to issue a search warrant. Reynolds' affidavit set forth his qualifications as a trained investigator of computers for computer crimes and child pornography. Accordingly, the Colonel was entitled to give some deference to the agent's statement that the photograph constituted an "image of suspected contraband," even though the affidavit's description of the photograph did not necessarily support the conclusion that the photograph constituted child pornography. Furthermore, the affidavit indicated that the police had responded to "a report of child neglect," that no custodial parents were at the residence, that Krupa, who was not affiliated with the military, had care and custody of the residence, and that the residence contained 15 computers. In sum, the investigator's assertion that he had found an "image of suspected contraband" — implicitly referring to child pornography — in computers seized from a home for which there had been a report of child neglect, and where there was no custodial parent present, created a "fair probability" that contraband or evidence would be found in the computers. *See Gates*, 462 U.S. at 238.

Our opinion in *Battershell* does not compel a contrary perspective. There, we held that a single photograph of a young girl between 8 and 10 standing nude in a bath tub is insufficient to establish probable cause. 457 F.3d at 1051. However,

we went on to hold that a second picture and the totality of the circumstances did establish probable cause and we affirmed the denial of the motion to suppress. *Id*. at 1054. In *Battershell*, other than the two photographs extracted from Battershell's computer, there was no reason for the authorities to suspect any criminal activity. Similarly, in *Hill*, but for a computer technician's discovery of what she believed to be child pornography on the defendant's computer, 459 F.3d at 968, there was no indication of criminal activity.[4] In contrast, here the presence of 15 computers under the control of a civilian with no apparent ties to the military in a home on a military base in which children resided and for which the military police had received a report of child neglect, is unquestionably suspicious. In this context, even accepting that the picture, with its tag "www.nude-teens.com," was not child pornography, we cannot say that Colonel LaFave could not reasonably conclude that there was "a fair probability that contraband or evidence of a crime" would be found on the computers.

Even if we were to conclude that there was not probable cause to support the warrant, we would affirm the district court on its finding that the warrant fit within the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984). We "review de novo the district courts' application of the good faith reliance exception." *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007). We have generally held that "[i]n borderline cases, preference will be accorded to

---

[4]The difficulty inherent in determining whether a photograph of a minor is a "lascivious exhibition of the genitals or pubic area" as proscribed by 18 U.S.C. § 2256(2)(A)(v), the issue in *Battershell* is illustrated by the subsequent opinion in *Hill,* 459 F.3d 966. In *Hill*, we determined that a state judge finding of probable cause was "well within his discretion," even though the description of the photographs (on which the judge issued the warrant) was not very different from the description of the first photograph in *Battershell*. *See Hill*, 459 F.3d at 968-69, 972. Moreover, *Battershell* and *Hill* were decided well after Colonel LaFave issued the search warrant in this case and thus were not available to guide his decision.

warrants and to the decision of the magistrate issuing it," *id.*, and accordingly, give the district court's findings some deference. *See U.S. v. SDI Future Health, Inc.*, 568 F.3d 684, 706 (9th Cir. 2009).

In *Crews*, we explained that:

> For the good faith reliance exception to apply, the officers must have relied on the search warrant in an objectively reasonable manner. *United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994). The affidavit "must establish at least a colorable argument for probable cause" for the exception to apply. *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006). Therefore, if there is a colorable argument that the search of Apartment 3 was supported by probable cause, the officer's reliance on the search warrant was objectively reasonable.

In *United States v. Shi*, 525 F.3d 709, 731 (9th Cir. 2008), we reiterated "[g]ood faith reliance exists if the agents' affidavit establishes 'at least a colorable argument for probable cause,' and the agents relied on the search warrant in an objectively reasonable manner." (internal citation omitted).

**[4]** We conclude that the district court reasonably determined that in 2002 — four years prior to our opinion in *Battershell* — there was a "colorable argument for probable cause" for the issuance of the search warrant based on the circumstances under which the 15 computers were found and the discovery of the suspect photograph by Agent Reynolds in his initial search of the computers. As the district court noted, there is no showing that "Agent Reynolds lied, was untruthful, gave false information, or misled the magistrate in any way," and the presence of 15 computers, some linked together, was obviously "unusual." We agree that if the warrant itself lacks probable cause, the *Leon* good-faith exception applies, and the evidence need not be suppressed.

**[5]** Finally, although not addressed by the parties, we note that the search took place on a military base and that our case law at least suggests that civilians such as Krupa impliedly consent to searches when they enter a military base. *See Morgan v. United States*, 323 F.3d 776, 778 (9th Cir. 2003) (holding that a warrantless search of a person seeking to enter Edwards Air Force Base may be deemed reasonable based on the implied consent of the person searched).

In sum, giving the appropriate deference to Colonel LaFave's determination as required by *Gates*, 462 U.S. 213, and our own precedent, we conclude that he could have reasonably determined that there was probable cause to support the issuance of the search warrant. Alternatively, even if we were to determine that there was not probable cause for the warrant, we would affirm the district court's determination that the warrant fit within the good-faith exception set forth in *Leon*, 468 U.S. 897. Accordingly, the district court's denial of Krupa's motion to suppress is **AFFIRMED**.

---

BERZON, Circuit Judge, dissenting:

The majority seems to imagine "probable cause" as a cloud that follows certain people around, created by their idiosyncratic habits and irresponsible friends, and persisting even though the individuals are not suspected of any particular crime. This "probable cause" cloud, the majority imagines, is available for invocation by law enforcement to justify virtually any search. But, as the case law makes clear, probable cause does not exist in the air. And probable cause to think that someone is odd or that his friend is a negligent father does not justify seizing and searching his computers.

Instead, to justify a Fourth Amendment search, there must be probable cause to think that "contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*,

462 U.S. 213, 238 (1983). In a case, such as this one, where the items to be seized—images on a computer—could be, and usually are, innocuous in nature, an affidavit in support of a search warrant must establish a "fair probability" that the images actually *are* contraband or evidence of a crime. *Id.* Here, "the more precise question we must answer is whether the officer's affidavit established probable cause that the images on the defendant's computer were—as described— lascivious." *United States v. Hill*, 459 F.3d 966, 970-71 (9th Cir. 2006).

Because the majority loses sight of these fundamental precepts, I respectfully dissent.

## I.

Although the majority stresses that we are to give "great deference" to a magistrate's probable cause finding, Maj. op. at 18599 (quoting Hill, 459 F.3d at 970), deference has never meant abdicating our role to ensure that the Fourth Amendment is respected. As explained in *Gates*, this deference is meant to account for "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant," lest police conclude that warrants are simply not worth the trouble and "resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search." 462 U.S. at 236. Accordingly, *Gates* instructs us to interpret affidavits in a "commonsense," rather than "hypertechnical" manner, *id.*, resolving "doubtful or marginal cases" in favor of upholding the warrant's validity, *id.* at 237 n.10 (citation omitted); *see also Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009).

Nonetheless, *Gates* was clear that we "must continue to conscientiously review the sufficiency of affidavits on which warrants are issued" to ensure that the magistrate's issuance of the warrant was not "a mere ratification of the bare conclu-

sions of others." 462 U.S. at 239. In practice, applying the requisite deference means that we look to see whether there was a "substantial basis" for probable cause to search, *United States v. Leon*, 468 U.S. 897, 915 (1984), reviewing the magistrate's ultimate finding as to probable cause for clear error. *Hill*, 459 F.3d at 970.

This is not a "doubtful or marginal case[ ]." *Gates*, 462 U.S. at 237 n.10. The affidavit supporting the search warrant for Krupa's computers was indubitably inadequate to provide probable cause.[1] As the district court noted, there was but a single fact arguably supporting probable cause: the discovery of a photograph that "appeared to be of a nude 15 to 17 year old female with a web site label of www.nude-teens.com." And that fact was insufficient to provide probable cause to believe that Krupa's computers contained child pornography.

## II.

Before turning to that single fact, I discuss other facts that the majority maintains *alone* support probable cause: that Sgt. Velasco was out of the country and had left his two children in the care of Krupa, who was a civilian; that police had responded to a "report of child neglect"; and the presence of 15 computers. Maj. op. at 18601. I agree with the district court that none of these factors have any pertinence at all to whether the warrant was issued with probable cause to believe that Krupa possessed child pornography, much less add up to probable cause without more.[2]

---

[1]The text of the affidavit in support of the search warrant is attached, in its entirety, as an appendix to this opinion.

[2]"In reviewing a search warrant on probable cause grounds, this Court, like the district court, is limited to the information and circumstances contained within the four corners of the underlying affidavit." *Crowe v. County of San Diego*, 608 F.3d 406, 434 (9th Cir. 2010) (citation and quo-

We must consider, of course, "the totality of the circumstances" in assessing probable cause. *United States v. Hay*, 231 F.3d 630, 635 (9th Cir. 2000) (citation omitted). But a particular fact is only *relevant* to this inquiry insofar as its existence makes it more likely that the suspect is engaged in the criminal activity suspected. *See, e.g.*, *Millender v. County of Los Angeles*, 620 F.3d 1016, 1030 (9th Cir. 2010) (en banc), *cert. granted*, ___ S.Ct. ___, 2011 WL 2518829 (2011); *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1446-47 (9th Cir. 1994). Neither the government nor the majority explains how the fact that Krupa was a civilian living on a military base makes it more likely that there was child pornography on his computers, and I certainly see no connection.[3] This fact is just useless trivia.

The majority's related invocation of *Morgan v. United States*, 323 F.3d 776, 778 (9th Cir. 2003) to suggest that "civilians such as Krupa impliedly consent to searches when they enter a military base," Maj. op. at 18604, fails badly. There is a very good reason why this argument was, as the majority notes, "not addressed by the parties," *id.* at 18604: it is undisputed that Krupa did *not* consent. In fact, Krupa expressly *revoked* his consent to Reynolds searching his computers. *See id.* at 18598 ("Krupa revoked his consent to the search of the computers."). Thus, to make any sense at all, the majority's suggestion that Krupa impliedly consented to the search of his computers (even after he had revoked his

_____

tation marks omitted). Consequently, many of the facts the majority recites at the outset of the opinion—that the house was in disarray, that Sgt. Velasco was in the Philippines, and what Krupa said to an FBI agent—are not pertinent to our inquiry, as they did not appear in the affidavit supporting the application for the search warrant.

[3]Although the majority repeatedly emphasizes the oddity of Krupa, a civilian, staying at Andrews Air Force Base, the back story is quite mundane and not at all suspicious. Krupa was a decorated member of the United States Air Force for six years, receiving his honorable discharge months prior to the incidents in question.

express consent) must encompass the notion that this implied consent was *irrevocable*. The majority provides nothing to support this radical suggestion.[4]

   That there were 15 computers in the home fares no better in supporting probable cause than the civilian-on-a-military-base fact. Neither the majority nor the government has explained how this fact makes it one whit more likely that Krupa had child pornography. There is not even the bare assertion that, for example, having that many computers, which Krupa apparently refurbished and resold, fits a "profile" of a collector of child pornography, such as the one discussed in *United States v. Gourde*, 440 F.3d 1065, 1072 (9th Cir. 2006) (en banc). Instead, the government asserts that the computer collection is inherently "suspicious[ ]," but does not endeavor to explain why, or how this "suspicion" is at all related to the likelihood that the computers had child pornography (or any other contraband) on their hard drives. As we recently had occasion to note, "even inexpensive electronic storage media today can store the equivalent of millions of pages of information." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1175 (9th Cir. 2010) (en banc). So the ability or likelihood of collecting even large amounts of child pornography does not increase simply because someone has multiple computers instead of one; a person so inclined can download reams of child pornography on a single computer with an internet connection.[5] *See id.*

---

   [4]Moreover, *Morgan* concerns only an implied consent to a search of the person on initial entry onto a military base. *Morgan* does not suggest, nor does any other case of which I am aware, that implied consent carries over as long as the civilian is on the base (or here, even after he has left the base) and is transferred to his far-out-of-reach possessions as well as his person.

   [5]The majority also never explains why it matters that "some of [the computers]"—in reality, three of them—"were linked together," Maj. op. at 18597, no doubt because it doesn't. In the first place, that fact does not appear in the search warrant application affidavit, so it is irrelevant. *See*

Further, the government suggests that the "defendant's first providing consent to review his many computers and then revoking this consent" supported probable cause, and the affidavit supporting the warrant application also recited this fact as supporting probable cause. But that fact cannot be considered for present purposes either. "[R]efusal to consent to a warrantless search is privileged conduct which cannot be considered as evidence of criminal wrongdoing." *United States v. Prescott*, 581 F.2d 1343, 1351 (9th Cir. 1978); *see also Gasho v. United States*, 39 F.3d 1420, 1438-39 (9th Cir. 1994) (same).

Finally, the majority also places weight on the affidavit's hearsay mention of a "report of child neglect," Maj. op. at 18601, but there are three problems with doing so. First, the affidavit gives zero indication as to whether the allegation was ever substantiated. Second, the affidavit's "report of child neglect" language is, at best, misleading hyperbole; in fact, the children's mother, according to the police report, asked the police to go by the home to check on her children when they did not arrive at the train station as previously arranged. The government's brief is more honest, calling the visit a "child welfare check." Insofar as the misleading "child neglect" label supported probable cause, it must be disregarded. *See United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011); *Crowe*, 608 F.3d at 435; *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008). Third, and most

---

note 2, *supra*. Moreover, all the majority posits about the linkage is that it was "unusual." Maj. op. at 18603. An "unusual" fact only supports probable cause if it is probative of criminal activity. *See Gates*, 462 U.S. at 238; *Hill*, 459 F.3d at 970 ("The Constitution is clear; a magistrate may authorize a search of a location only if officers establish probable cause to believe evidence of a crime may be found there."). In any event, local area networks (LAN) are *not* unusual; they are an exceedingly common fact of modern life, used by technophiles and Luddites alike. The record indicates that Krupa used the LAN at issue here to play computer games with his Air Force friends.

importantly, a generalized report that someone is neglecting children in his care, even if substantiated, does not provide probable cause to think that child pornography would be found on his computers.

The majority nonetheless goes so far as to hold that these irrelevant facts, taken together—"the presence of fifteen computers under the control of a civilian with no apparent ties to the military in a home on a military base in which children resided and for which the military police had received a report of child neglect"—is "unquestionably suspicious" enough to constitute, without more, "a fair probability that contraband or evidence of a crime would be found on the computers. Maj. op. at 18601-02 (quotation marks omitted). In other words, the majority maintains that even "accepting that the picture" described in the affidavit "was not child pornography," there was probable cause for the search. *Id.* at 18602.

Not so. Zero plus zero plus zero equals zero, not probable cause.

For one thing, a search warrant affidavit must establish a "nexus . . . between the item to be seized and [the allegedly] criminal behavior." *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967). In other words, "probable cause must be examined in terms of cause to believe that the evidence sought will aid in a *particular* apprehension or conviction," and not just whether, if law enforcement were allowed to poke around enough, they might find evidence of something illegal. *Id.* (emphasis added); *see also United States v. Rubio*, 727 F.2d 786, 793 (1983). Second, the compendium of facts relied upon could not provide probable cause of *any* crime. Civilians stay with friends on military bases; people watch their friends' children; and today, people have computers, even many computers, in their homes. These facts, even taken together and mixed with dollops of deference, simply do not support seizing and searching someone's computers.

## III.

That leaves the question whether, the majority's extravagant holding concerning the existence of probable cause even *without* the photograph aside, the photograph could supply the missing probable cause. The photo was not included with the affidavit in support of the search warrant, and was described only as "appear[ing] to be of a nude 15 to 17 year old female."

*United States v. Battershell*, 457 F.3d 1048 (9th Cir. 2006), dictates that this bare description cannot possibly provide probable cause. As *Battershell* relates:

> Federal law defines five categories of "sexually explicit conduct" with respect to child pornography. The first four categories deal with specific conduct that is easy to identify and describe: "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; [and] (iv) sadistic or masochistic abuse . . . ." The fifth category . . . is the "lascivious exhibition of the genitals or pubic area of any person."

*Id.* at 1051 (quoting 18 U.S.C. § 2256(2)(A)).[6] The affidavit in this case makes no mention of any particular conduct, so the photograph found on Krupa's computer can only have fallen into the fifth category, if any.

The affidavit stated only that the female appeared to be 15 to 17 and was nude. It said nothing about what parts of her body were depicted, much less that they were exhibited lasciviously—that is, "so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur." *Hill*, 459

---

[6]Cal. Penal Code § 311.3, also recited by the affidavit, is identical in all material respects.

F.3d at 972 (quoting *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987)). And of course, "not all images of nude children are pornographic." *Id.* at 970; *see also id.* ("For example, 'a family snapshot of a nude child bathing presumably would not' be criminal." (citation omitted)). Indeed, "the law recognizes that some images of nudity may merit First Amendment protection because they serve artistic or other purposes, and possessing those images cannot be criminal." *Id.* The affidavit supporting the search warrant said absolutely nothing from which one could conclude that this image was child pornography, rather than art. For all we know from this description, the photograph was taken by a latter-day Renoir, intent on portraying from the back a young woman bathing.

   The upshot is that here, as in *Battershell*, the affidavit's

      terse description, absent an accompanying photo-
      graph, is insufficient to establish probable cause that
      the photograph lasciviously exhibited the genitals or
      pubic area because [its] conclusory statement is an
      inherently subjective analysis and it is unclear if the
      photograph exhibited the young female's genitals or
      pubic area.

*Battershell*, 457 F.3d at 1051.

   In one respect, the affidavit here is even *more* deficient than that in *Battershell*, which involved a young female esti-mated at 8 to 10 years of age. *Id.* The subject of the photo-graph here, by contrast, appeared to be 15 to 17 years old. Had that estimate been low by just a year, this photograph would not have been illegal child pornography, but rather, perfectly legal adult pornography, injecting an additional fac-tor of uncertainty absent in *Battershell*.

   That the photograph had "a web site label" of www.nude-teens.com adds nothing to the probable cause analysis, at least

absent *some* effort—apparently not undertaken here, despite ample opportunity to do so—to ascertain whether that website actually provides *pornographic* photographs of *underage* teenage girls. The website name itself does not indicate that some, much less most or all, of the photographs on it were pornographic, nor is there any other evidence so indicating. By way of contrast, in *Gourde*, the search warrant affidavit contained "unequivocal" evidence that a particular website (of which the defendant was a paid subscriber) "was a child pornography site whose primary content was in the form of images." 440 F.3d at 1070. Not only did the owner admit as much, *see id.*, but a government agent also extensively explored the website, *see id.* at 1067. Here, in contrast, the *only* thing we know is that the photograph had a uniform resource locator (URL) "label" of "www.nude-teens.com."

The majority tries to fill that gap with the assertion that because the affidavit recited Reynolds' experience and training, the magistrate "was entitled to give some deference to [Reynolds'] statement that the photograph constituted an 'image of suspected contraband,' even though the affidavit's description of the photograph did not necessarily support the conclusion that the photograph constituted child pornography." Maj. op. at 18601. No, he wasn't. The Fourth Amendment's warrant requirement rests on the understanding that the protection of liberty requires review by independent magistrates before a search is authorized, not just taking the government's word when it claims the need and justification to subject individuals to non-consensual searches of their property. *See, e.g.*, *Leon*, 468 U.S. at 915; *Coolidge v. New Hampshire*, 403 U.S. 443, 449-53 (1971). That principle is the basis for the rule that we cannot look beyond "the four corners of the underlying affidavit," *Crowe*, 608 F.3d at 434 (citation omitted), even if the affiant had knowledge supporting probable cause that he never disclosed to the issuing magistrate, *see Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971). "A contrary rule"—adopted by the majority here—"render[s] the

warrant requirements of the Fourth Amendment meaning-less." *Id.*

Of course, there are circumstances in which the affiant's opinion, if informed by relevant experience and training and grounded in the facts of the case, can be *helpful* in ascertaining the existence of probable cause. *See generally United States v. Weber*, 923 F.2d 1338, 1344-45 (9th Cir. 1990). But even then, a magistrate never "defers" to an affiant. Rather, "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Leon*, 468 U.S. at 915 (quoting *Gates*, 462 U.S. at 239). Moreover, this is a situation in which Reynolds' experience and training mattered not at all, as neither gave him any more expertise than the average layperson as to the principal issue determining probable cause here: whether the photograph at issue "exhibited the genitals or pubic area" of the individual depicted. *Battershell*, 457 F.3d at 1051.

Further, even if this were a situation in which Reynolds' experience and training potentially could be relevant, his affidavit makes no effort to connect his experience and training to the facts of this case. In this respect, the affidavit is less adequate than the one found deficient in *Weber*, which at least averred that the affiant's substantial experience led him to believe that the suspect was a collector of child pornography. 923 F.2d at 1345. Here, by contrast, the only statements Reynolds makes about his experience with child pornography cases is that he has "observed numerous examples of child pornography" and "conducted and participated in investigations related to computer crimes and child pornography." Even more so than in *Weber*, these "boilerplate recitations designed to meet all law enforcement needs . . . . may have added fat to the affidavit, but certainly no muscle." *Weber*, 923 F.2d at 1345-46.

In sum, the only conclusion consistent with *Battershell* and the Fourth Amendment is that the affidavit did not provide probable cause for the search warrant.

## IV.

The *Leon* alternative holding the majority tacks on at the end of its opinion won't wash either. As already described, there is simply no question that the warrant here was issued on precisely the sort of impermissibly "bare bones" affidavit of which *Gates* warned, *see Gates*, 462 U.S. at 239, and no reasonable officer would have thought that it provided probable cause. *See Leon*, 468 U.S. at 899 ("[A]n officer [does not] manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."); *Weber*, 923 F.2d at 1346 (same).

I note that the government has not argued that this was a situation requiring quick decisionmaking or a hastily-drafted affidavit. For good reason. Although Reynolds' illness obviously complicated matters, that fact, even coupled with the revocation of consent, did not create the risk that Krupa would destroy incriminating evidence, as the computers were in the government's possession. As the majority relates, the computers were seized on April 12. From that point on, the computers were in the possession of the government, the children were safely in the custody of their mother, and Krupa was told that he was not permitted to stay in Sgt. Velasco's residence. Thus, if there was any exigency, it had long since dissipated by the time Reynolds obtained the search warrant some two weeks after the computers were seized. As a consequence, "there was no need for the 'hurried judgment' upon which law enforcement decisions must often be based," *Weber*, 923 F.2d at 1346 (citation omitted), and, as in *Weber*, "[a]lthough we do not question the subjective good faith of the government, it acted entirely unreasonably in preparing the affidavit it presented." *Id.*

## CONCLUSION

For the foregoing reasons, I would hold that the affidavit did not provide probable cause to search Krupa's computers, reverse the district court's application of *Leon*'s good-faith exception, and remand for consideration of whether, after excising the suppressed evidence from the affidavit supporting the second search warrant, probable cause remained for issuance of the second search warrant.

I cannot help but think that had this case involved anything but child pornography, it would come out differently. I fear that understandable abhorrence of this particular crime can infect judicial judgment. We would do well to remember that the protections of the Fourth Amendment do not depend on the nature of the suspected criminal activity, any more than they do on the race or gender of the suspect. And that is particularly so where the issue is the searching of personal computers, on which more and more extremely sensitive information is stored. *See Comprehensive Drug Testing*, 621 F.3d at 1176-77. "Given the current environment of increasing government surveillance and the long memories of computers, we must not let the nature of the alleged crime, child pornography, skew our analysis or make us 'lax' in our duty to guard the privacy protected by the Fourth Amendment." *Gourde*, 440 F.3d at 1074.

I respectfully dissent.

**APPENDIX: Affidavit In Support of Search Authority**

**Statement of Qualifications:**

I, Dennis Reynolds, your affiant, duly sworn peace officer employed by the Stanislaus County Sheriff's Department[ ], and have been since July 1998. I am currently assigned to the Sacramento Valley Hi-Tech Crimes Task Force. And have been so assigned since July 2000. In Oct 2001 I was recalled to active duty. I am a Master Sergeant in the United Stated Air Force and I am currently assigned as an Investigator for the 95th Security Forces Squadron, investigations section. I have been an Air Force Security Policeman in the Air Force Reserve [s]ince January 1996[.] Further I have been involved [i]n [m]ilitary and [c]ivilian [l]aw [e]nforcement for 24 Years.

I attended the U.S. Army Military Police School in 1979 upon completion of my training I worked various assignments of patrol, physical security, and minor crimes investigation during various assignments[.]

In October 1981, upon leaving active duty I [j]oined the California Army National Guard. I was assigned as a Military Police Investigator[.] I completed training and course work for this assignment in March 1982. My course work included criminal investigations, rules of evidence, and search and seizure. I held the assignment till [sic] December 1990. In December 1990 I was assigned as a CID Special Agent (reserve) with The U.S. Army Criminal Investigations Command. I was assigned to a General Crimes Team. During this assignment I investigated many crimes including financial, sex crimes, arsons, auto theft, and homicides. I held this duty assignment until I transferred to the Air Force Reserve in 1996.

In February 1983 I became a full time sworn peace officer for the Orange County Sheriff's Department where I attended the Orange County Sheriff's Academy. I received 670 [h]ours

of instruction in the detection and investigation of criminal activity. I was assigned to adult detention/[p]atrol where I worked until 1986.

From January 1990 to July 1992 I attended Consumnes River College where I completed 39 semester units in the study of criminal investigations, police community relations, Rules of Evidence, and Search and Seizure. In April 1993 I became a Reserve Police Officer for the Patterson Police Department, patrol division until July 1998 where I gained first-hand experience in detection and investigation of criminal activity. I have investigated a multitude of crimes including threats, violent assaults, robberies, thefts, check fraud, narcotic offenses, and traffic accidents. In July 1998 I became a Deputy Sheriff-Coroner with the Stanislaus County Sheriff's Department. In October 1998 I was assigned as a Detective/computer crimes investigator/computer forensics examiner with the Stanislaus County Sheriff's Department. I was assigned to the Sacramento Valley Hi-Tech Crime Task Force in July 2000.

I am responsible for conducting investigations of computers and recovery of digital evidence from various types of digital media. During the course of my employment I have observed numerous examples of child pornography in all forms of media including computer media. I have conducted and participated in investigations related to computer crimes and child pornography.

I have attended numerous California Peace Officer Standards and Training courses including Legal Aspects of Investigations, Narcotic Investigations, Traffic Accident Investigations, Special Weapons and Tactics, Firearms Instructor, and Advanced Officer Training. I have also attended seventeen computer investigation courses where I have received over 628 hours of instruction in the area of computer Crimes, Internet Investigations and Child Exploitation; I also hold two California Peace Officer Standards and

Training certifications as a computer crimes special-ist/investigator. I have also conducted over 200 computer forensic examinations [i]n the past two years.

I am a member of several professional associations includ-ing; the High Technology Crime Investigators Association, High Technology Crime Network, California Narcotic Offi-cers Association, The National Tactical Officers Association, and the Peace Officers Research Association of California.

**Summary:**

This case concerns possible child pornography and contra-band[.]

**Facts in Support:**

On Friday April 12, 2002[,] I, Inv Dennis Reynolds[,] was advised by TSgt Kennedy that he had responded to [redacted address] for a report of child neglect. As a result of this patrol response[,] TSgt Kennedy [a]dvised me that there were sev-eral computers at the location and the there [sic] were no cus-todial parents at the house only an individual KRUPA who was not affiliated with the military. This person had care and custody of the residence. I asked TSgt Kennedy to establish if there was anything that involved possession or any other types of contraband at the location in addition to asking for consent to review the data contained with this the computers [sic] of any floppies o[r] CDROM media at the location. Con-sent was given and 13 computer towers and 2 laptop systems. [sic]

1.   During the course of investigating this case and work-ing under the original consent I located an image of suspected contraband. This photograph appeared to be of a nude 15 to 17 year old female with a web site label of www.nude-teens.com[.] [B]ased on this photograph being located and the fact that consent has been revoked by both Mr. KRUPA and

SSgt Velasco I am requesting authority to continue this search for any further items of contraband. But as these systems were used by both parties, and based on the common use of this system I am requesting search authority.

**Conclusion:**

Based on the above facts, and your affiant[']s knowledge, training and experience, and the experience of other law enforcement personnel[,] I request that search authority be issued with respect to the requested location and for the seizure of said property.

There is probable cause to believe that the suspect has violated laws of the United States. Specifically, Title 18 U.S.C. 2252 and 2252A which make it a crime to knowingly possess, transport, ship[,] receive, distribute, or reproduce material involving the sexual exploitation of minors (2252) or material constituting or containing child pornography. (2252A) [T]hese materials are contraband[,] as well as violations of California Penal Code Section 311.1 Possession of Child Pornography.

Digital media is instrumentality of the crime and/or contraband or a container for evidence relating to the crime and will be removed for off-scene search. The amount of time currently required for this examination is 120 days plus 10 days for review.

/s/ Dennis Reynolds, Msgt, USAF
Investigator, 95th Security Forces Squadron

/s/ David A. LaFave, Col, USAF
Search Magistrate, Edwards AFB, CA

Date: [blank]      Time: [blank]